IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SHEENA FARMER                                                                                    PLAINTIFF

v.                                   NO. 3:16-cv-00088 PSH

CAROLYN W. COLVIN, Acting Commissioner                                      DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Sheena Farmer ("Farmer") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Farmer maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] Farmer first maintains that her residual functional capacity was not properly assessed. It is Farmer's position that the ALJ erroneously found Farmer capable of performing light work and, in so finding, erroneously evaluated her credibility.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of making the assessment, the ALJ is required to evaluate the claimant's credibility regarding her subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ makes that evaluation by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

The medical evidence relevant to Farmer's mental and physical impairments is not voluminous. A summary of the medical evidence reflects that on July 26, 2010, she was seen by Dr. Suzanne Gibbard, Ph.D., ("Gibbard") for a mental status evaluation. See Transcript at 264-268.[2] Gibbard diagnosed Farmer with "major depression, recurrent, moderate," and observed the following: "Ms. Farmer reported symptoms of moderate to severe depression and previous treatment for depression. She has a history of severe drug abuse, Meth, but has remained drug free since 2007. She reported psychotic symptoms

---

[2] Farmer seeks supplemental security income payments pursuant to Title XVI of the Social Security Act. The relevant period for her claim began on the day she filed her application for such payments, i.e., August 14, 2013. The Court will nevertheless briefly consider evidence prior to August 14, 2013, for the purpose of placing her application in context.

in the past that appear to be related to the drug abuse." See Transcript at 267. With respect to the effects of Farmer's impairment on her adaptive functioning, Gibbard found that Farmer could manage her activities of daily living, could participate in social activities, had communication skills within an adequate range, and could cope with mental cognitive work demands. Gibbard also found, though, that Farmer had problems sustaining concentration, e.g., "in the area of digits backward and serial three's," see Transcript at 267, and problems completing tasks in a timely manner.

On August 10, 2010, Farmer saw Dr. David Lee Webber, D.O., ("Webber") for a general physical examination. See Transcript at 270-274. He recorded her medical history and noted her complaints of pain and tingling in her hands and feet and pain in her lower back. An examination revealed that she is sixty-two inches tall and weighed 199 pounds. She had normal range of motion in all of her extremities but had some joint pain and some numbness and tingling in her right hand and leg. She exhibited no muscle weakness, no muscle atrophy, and a normal gait/coordination. Webber observed that Farmer could stand/walk without an assistance device, could walk on her heel and toes, could squat/arise from a squatting position, and had normal grip strength. He diagnosed arthralgia, low back pain, and abnormal weight gain. He characterized the severity of her limitations as moderate.

On March 2, 2013, Farmer was seen by Dr. Blaine Broussard, M.D., ("Broussard") for a general physical examination. See Transcript at 277-280. He recorded her medical history and noted the following:

> 1. Bilateral hand and feet pain and tingling for the past 20 years. She was diagnosed with poor nutrition, that may be a cause of this, last August 2012. She states that bilateral hand and feet pain has been … worse in the past few years, nothing seems to relieve the symptoms, it definitely gets worse at night, started on her feet moved up to her lower legs, and then she notes in her hands.
>
> 2. Low back pain. This has been going on since 1998, occurs in her mid back, radiates upward to her lower neck, relieved with flexing her hips, also relieved with Tylenol, stating pain is a stabbing pain, aggravated with excessive movement of her back.

<u>See</u> Transcript at 277. Broussard recorded Farmer's medication to include iron tablets, a multi-purpose vitamin, Tylenol, and a stool softener. He examined her and made the following findings with respect to her medical condition:

> BACK: Normal alignment. No tenderness to palpation. Lumbar flexion is 0 to 90. Lumbar extension is 0 to 30 to 40. Straight leg raise is negative in the right and left bilaterally in sitting and supine positions.
>
> …
>
> NEUROLOGICAL: Cranial nerves II through XII intact bilaterally. Deep tendon reflexes in the Achilles, patellar and biceps 2+ bilaterally. Cerebellar testing shows negative Romberg. Rapid alternating movements finger-to-nose and heel-to-shin all were performed without difficulty bilaterally. Gait, normal gait no limping, no use of assistive devices. Able to walk, toe walk, and heel-to-walk without difficulty.
>
> …
>
> STRENGTH TESTING: 5/5 in the upper and lower extremities in the shoulders, elbows, wrists, and in flexion and extension of all joints in the upper extremities. Lower extremities hip flexion and extension is 5/5, knee flexion and extension is 5/5, ankle dorsi and plantar flexion is 5/5. Also has 5/5 grip strength in her hands bilaterally.

> MUSCULOSKELETAL: Range of motion of the extremities, shoulder has full forward extension 0-150, and full flexion, elbow flexion 0-150, wrist dorsi and palmar flexion is 0-60 bilaterally. Hip flexion and extension was full. Knee flexion and extension is 0-180. Ankle dorsiflexion and plantar flexion are full. Of note, the exam is very inconsistent with muscle testing and visible function.

See Transcript at 279-280. Broussard diagnosed bilateral hand and feet pain and also diagnosed back pain. In making the diagnoses, he opined the following:

> 1. Bilateral hand and feet pain, possible neuropathy though the exam does not correlate with the history that she gave as far as pain and exacerbation of the pain. There was no pain obvious on exam nor did she endorse any during the entirety of the exam. Therefore, I conclude that she has no impairment of her activity.
>
> 2. Back pain. The lower back … muscle spasms that are intermittent are not apparent at this time, not able to elicit any back pain on full testing. So therefore I conclude she has no impairment from this.

See Transcript at 280.

On March 5, 2013, Farmer was seen by Dr. Samuel Hester, Ph.D., ("Hester") for a mental diagnostic evaluation. See Transcript at 282-290. He recorded her medical history and noted, inter alia, her complaints of chronic pain in her head, neck, back, and feet and her complaints of sadness and worrying about her future. Her mood was slightly anxious, but her affect was appropriate to her mood. Her thought process and thought content were unremarkable, and she was fully oriented in all spheres. He diagnosed a pain disorder with medical and psychological factors and observed the following with respect to the effects of her mental impairments on her adaptive functioning:

> 1. How do mental impairments interfere with this person's day to day adaptive functioning? ... [Farmer] was able to drive unfamiliar routes. [She] was reportedly able to perform most [activities of daily living] autonomously. She does the shopping and bill paying but is usually accompanied. She does participate in social groups with extended family members.
>
> 2. Capacity to communicate and interact in a socially adequate manner? ... [She] has the capacity to communicate and interact in a socially adequate manner.
>
> 3. Capacity to communicate in an intelligible and effective manner? [She] has the capacity to communicate in an intelligible and effective manner.
>
> 4. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks? [Farmer] can cope with the mental demands of basic work tasks.
>
> 5. Ability to attend and sustain concentration on basic tasks? [She] has the ability to attend and sustain concentration on basic tasks.
>
> 6. Capacity to sustain persistence in completing tasks? [Farmer] has the ability to sustain persistence in completing tasks.
>
> 7. Capacity to complete work-like tasks within an acceptable time frame? [She] can complete work tasks within an acceptable timeframe.

See Transcript at 288.[3]

On July 2, 2013, Farmer presented to NEA Baptist Hospital complaining of pain in her right shoulder and in both of her hands and wrists, pain she attributed to being handcuffed by police officers. See Transcript at 291-297. She reported a history of

---

[3] Farmer maintains that Hester did not sign his report, and it is not clear whether the report contains his findings. The Court adopts the Commissioner's assertion that "the last page of the consultative examination report is an 'electronic records express attestation' that includes ... Hester's electronic signature," see Document 11 at CM/ECF 8 n.5, and finds that the report contains Hester's actual findings.

restless leg syndrome and fibromyalgia. X-rays of her right shoulder revealed degenerative changes of the right acromioclavical joint and calcifications consistent with tendonitis. X-rays of her wrists revealed no osseous or soft tissue abnormality.

On July 10, 2013, Farmer presented to the East Arkansas Family Health Clinic complaining of shoulder, back, and leg pain. See Transcript at 316-320. Amy Johnson, APN, ("Johnson") recorded Farmer's specific complaints as follows: "[Farmer] presents [complaining of] [bilateral] lower leg pain, states feels like her legs are in knots, worse at night. Also has chronic back pain and [bilateral] shoulder pain." See Transcript at 316. Farmer denied any depression. Johnson recorded Farmer's medical history and noted that it included arthritis, neuropathy, chronic obstructive pulmonary disease ("COPD"), muscle spasms, and anemia. Farmer reported that her medications included nortriptyline and vicodin. Johnson examined Farmer and found nothing remarkable. For instance, Johnson observed that Farmer had full range of motion, although she had "mild TTP with light touch diffuse." See Transcript at 317. Johnson diagnosed muscle spasms, anemia, a vitamin deficiency, neuropathy, and COPD and prescribed medication.

On September 26, 2013, and again on October 16, 2013, Farmer sought medical attention from Dr. Traci French, M.D., ("French'") for back and leg pain and a left wrist cyst. See Transcript at 339-343. Farmer was found to weigh between 210 and 212 pounds, giving her a Body Mass Index of between thirty-seven and thirty-eight. French examined Farmer and found nothing remarkable, save a cyst on Farmer's left wrist. French diagnosed neuropathy and anemia and prescribed medication.

On June 2, 2014, Farmer sought medical attention at the St. Bernards Medical Center ("St. Bernards") after she passed out in a Wal-Mart. See Transcript at 382-390. She reported that her left ankle was swollen and painful. Her medical history was recorded and noted to include arthritis, back problems, muscle weakness, and bursitis. She also reported a history of anemia, anxiety, and depression. She was examined, and nothing remarkable was observed. She was diagnosed with chronic neuropathy and restless leg syndrome and discharged with instructions to see her primary care physician.

On July 20, 2014, Farmer sought medical attention again at St. Bernards after she injured her back doing housework. See Transcript at 375-381. She was examined, and the extremities portion of the examination revealed the following: "tenderness-ttp to lumbar paraspinal muscles, full [range of motion], no edema or erythema noted." See Transcript at 379. Her muscle strength was found to be 4/5 in all of her extremities. She was diagnosed with back spasms and prescribed medication.

On July 23, 2014, Farmer sought medical attention at St. Bernards after she was physically assaulted by her husband. See Transcript at 357-374. She reported injuries to several parts of her body. She was examined and found to be in moderate distress with some tenderness. X-rays were taken of her left hand, left knee, and left ankle, and the x-rays revealed no significant soft tissue swelling but did reveal mild to moderate osteoarthritis changes and a loss of joint space in her left knee. The discharge problems/impressions were "assault, [m]ethamphetamine abuse, [and] [c]annabis abuse," see Transcript at 361, and she was prescribed medication.

On what appears to have been two occasions in September of 2014, Farmer was seen by Dr. Ronald Barnett, M.D., ("Barnett") for complaints of pain and a depressed mood. See Transcript at 391-393 (09/02/2014), 393-395 (09/10/2014). A review of her musculoskeletal system was positive for myalgias and back pain, a review of her neurological system was positive for tingling, and a review of her psychiatric/behavior system was positive for a dysphoric mood and decreased concentration. She was examined on both occasions, and she exhibited normal range of motion in all of her extremities, no edema, and no tenderness. Although her thought content was normal, her mood appeared anxious and her speech was rapid and tangential. She appears to have been diagnosed with, inter alia, restless leg syndrome, numbness and tingling in both legs, and depression with anxiety. Medication was prescribed.

Farmer's medical records were reviewed by state agency physicians. See Transcript at 74-82, 84-94. The physicians agreed that Farmer's impairments are not severe and do not significantly limit her ability to perform basic work activities.

A summary of the non-medical evidence reflects that Farmer was born on July 7, 1958, and was fifty-six years old at the time of the administrative hearing. See Transcript at 36. She reported that in the past fifteen years, she worked in telemarketing for approximately one year, at a "scrub shop" for approximately three months, as a cashier for approximately nine months, and as a laborer for approximately ten months. See Transcript at 177, 201. She also worked as a "prep cook" at a deli on two occasions between March of 2006 and January of 2010. See Transcript at 177, 201.

Farmer and her husband completed a series of documents in connection with Farmer's application for supplemental security income payments. See Transcript at 188-197, 211-212, 214-221, 232-233, 234-240. The documents reflect that Farmer reported a number of functional limitations, e.g., lifting, standing, walking, sitting, reaching, memory, concentration, completing tasks, understanding, and following instructions. She has difficulty driving an automobile and experiences pain when standing, walking, or sitting for more than ten to fifteen minutes at one time. She has difficulty attending to her personal care and requires help doing so. She has difficulty preparing meals, she can do very little house work and no yard work, but she does spend time with others. She has difficulty remembering instructions and getting along with authority figures.

Farmer testified during the administrative hearing. See Transcript at 36-67. She testified that she is sixty two inches tall and weighs two hundred pounds. She graduated from high school and can add and subtract. She last worked in 2010 and has sought disability benefits on five previous occasions. She lives with her father, having left her husband after he physically assaulted her. Her legs hurt most of the time, and the pain disrupts her sleep. A typical day for Farmer consists of resting in her room. She suffers from depression and panic attacks, and she occasionally hears voices and has visions of her dead brother. She has used illegal drugs but now only occasionally uses marijuana. Farmer can no longer shop for groceries. She has been prescribed pain medication, but she no longer takes most of the medication. When asked to estimate the weight she can lift, she testified that she can "get the clothes out of the washer." See Transcript at 65.

The ALJ found at step two of the sequential evaluation process that Farmer has severe impairments in the form of back pain/arthralgia, restless leg syndrome, peripheral neuropathy, pain disorder, substance abuse, and depression. The ALJ assessed Farmer's residual functional capacity and found that she is capable of performing light work with the following additional limitations:

> … she should only occasionally bend, stoop, crouch, crawl, or balance, but should never climb ropes, scaffolding, or ladders. [She] is also limited to performing simple, routine, repetitive tasks with supervision that is simple, direct, and concrete, which require [her] to maintain occasional contact with coworkers, supervisors, and general public.

See Transcript at 16. In making the assessment, the ALJ gave great weight to Hester's opinions and credited many of the findings made by Broussard, Johnson, French, and Barnett. The ALJ did, though, discount some of Broussard, Johnson, French, and Barnett's findings because the ALJ believed Farmer to have greater limitations than they found. The ALJ gave little weight to Gibbard and Webber's opinions because the opinions were made approximately three years before the alleged onset date. The ALJ also gave little weight to the opinions offered by the state agency physicians because he believed Farmer to have greater limitations than they found. With respect to Farmer's subjective complaints, the ALJ found that they were not fully credible. At step four, the ALJ found that Farmer could perform her past relevant work as a "prep cook." Having so found, the ALJ concluded that Farmer has not been under a disability as defined by the Social Security Act since the date she filed the application at bar.

Farmer has limitations caused by depression and pain. The question for the ALJ was the extent to which they impact the most Farmer can do. The ALJ incorporated limitations for the impairments into the assessment of Farmer's residual functional capacity but found she was not disabled. The ALJ could find as he did as substantial evidence on the record as a whole supports his consideration of the evidence and his assessment of her residual functional capacity. The Court so finds for several reasons.

First, the ALJ adequately considered the medical evidence relevant to Farmer's mental impairments. The ALJ could and did credit Hester's opinions that Farmer can perform most activities of daily living; can communicate and interact in a socially adequate, intelligible, and effective manner; can cope with the mental demands of basic work tasks; can attend and sustain concentration; can sustain persistence in completing tasks; and can complete work tasks within an acceptable time frame.[4] The ALJ could and did also credit Barnett's observations that although Farmer's mood appeared anxious and her speed was rapid and tangential, her thought content was normal. Hester and Barnett's opinions are consistent with the minimal treatment record in this case as Farmer only occasionally sought medical attention for her mental impairments. Hester and Barnett's medical opinions are also consistent with the fact that Farmer occasionally denied any depression. For instance, when Farmer saw Johnson in July of 2013, Farmer denied feeling down, depressed, or hopeless.

---

[4] Hester's opinions are not inconsistent with Gibbard's opinions, although the ALJ could properly discount Gibbard's opinions because they pre-date the alleged onset date by three years.

Second, the ALJ adequately considered the non-medical evidence relevant to Farmer's mental impairments. Although Farmer alleges that her daily activities are severely restricted, the restriction of those activities is likely caused by factors other than her mental impairments. The treatment she obtained for her depression was minimal and conservative. It is worth noting that when Barnett saw Farmer on September 2, 2014, he recommended that she make an appointment with a psychiatrist; when he saw her again on September 10, 2014, he noted that she "did not keep her appointment for psychiatry." See Transcript at 393. The record reflects that Farmer engages in some social activities, and the ALJ could and did also question Farmer's credibility because of her inconsistent answers regarding the extent of her illegal drug use.[5]

Farmer admits in her brief that "[her] mental impairments are not enough in and of themselves to find her disabled as a result of a mental impairment." See Document 10 at 12. She maintains instead that her depression was not considered in combination with her physical impairments. There is no merit to her assertion. The ALJ acknowledged in his decision that he was required to consider all of Farmer's impairments in combination, see Transcript at 12, and a fair reading of his decision reflects that he considered all of her impairments in combination.

---

[5] Farmer was questioned extensively about her use of illegal drugs. See Transcript at 47-55. Her answers were inconsistent and not a model of clarity. For instance, she acknowledged a previously unreported period of cocaine use. She maintains that too much attention was devoted to her use of illegal drugs. The questions concerning her use of illegal drugs were asked, though, by both the ALJ and her own attorney. In any event, a fair reading of the ALJ's decision establishes that he gave appropriate but not excessive consideration to her use of illegal drugs.

Third, the ALJ adequately considered the medical evidence relevant to Farmer's physical impairments. The ALJ could and did credit many of the findings made by Broussard, Johnson, French, and Barnett regarding Farmer's back, hand, and leg pain. For instance, Broussard observed that Farmer's back had a normal alignment, no tenderness, and normal flexion and extension. In addition, he observed that her straight leg raise was negative, and she had a normal gait. He observed that she had normal strength and normal range of motion in all of her extremities and normal grip strength in her hands.[6] Johnson, French, and Barnett's observations were equally unremarkable. For instance, Johnson observed that Farmer had full range of motion, although she had "mild TTP with light touch diffuse." French simply observed that Farmer had a cyst on her left wrist, and Barnett observed that Farmer had normal range of motion in all of her extremities, no edema, and no tenderness. X-rays taken of Farmer's left hand, left knee, and left ankle revealed no significant soft tissue swelling, although the x-rays did reveal mild to moderate osteoarthritis changes and a loss of joint space in her left knee.

Farmer notes that she has a history of fibromyalgia, and the ALJ failed to consider the impairment and its limitations. See Document 10 at CM/ECF 13. As the Commissioner correctly notes, though, the only mention of fibromyalgia in the record is Farmer's self-report of such an impairment. See Transcript at 292. There is no evidence to support a diagnosis of fibromyalgia or any limitations caused by the impairment.

---

[6] Broussard's opinions are not inconsistent with Webber's opinions, although the ALJ could properly discount Webber's opinions because they pre-date the alleged onset date by three years.

Fourth, the ALJ adequately considered the non-medical evidence relevant to Farmer's physical impairments. Farmer testified that her daily activities are severely restricted, and a typical day consists of resting in her room. There is no evidence, though, to support such a severe restriction of her daily activities. The ALJ could and did also note that Farmer completed two separate function reports two months apart in which she made conflicting representations about her abilities. See Transcript at 17-18. Farmer has taken prescription pain medication but has done so only on occasion and not on a consistent basis. For instance, she took hydrocodone for a period of time after she was physically assaulted by her husband. She has a history of illegal drug use and a poor work record, neither of which bolster her credibility.

Farmer faults the ALJ for "repeatedly attacking [Farmer's] credibility." See Document 10 at CM/ECF 11. Having reviewed the record in this case, the Court is satisfied that the ALJ properly and fairly adjudged Farmer's credibility.

Farmer offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. A concise summary of Farmer's contention is not easy because she devotes much of her argument to analyzing her inability to perform irrelevant jobs. In any event, she appears to maintain that there is a conflict between her residual functional capacity and the demands of her past relevant work as identified by the vocational expert. Specifically, Farmer maintains that she was found to be capable of performing a reduced range of light work, but her past relevant work as a "prep cook" is performed at the medium exertional level.

There is no merit to Farmer's assertion. The ALJ will find a claimant is not disabled if she retains sufficient residual functional capacity to perform the actual demands of her past relevant work <u>or</u> is capable of performing the demands of the work as generally required by employers throughout the national economy. <u>See</u> Social Security Ruling 82-61. <u>See</u> <u>also</u> <u>Wagner v. Astrue</u>, 499 F.3d 842 (8th Cir. 2009). In this instance, the ALJ found that Farmer is capable of performing work as a "prep cook" as actually and generally performed. <u>See</u> Transcript at 26. The ALJ could so find as the vocational expert testified that Farmer's past relevant work is generally performed at the light, unskilled level. <u>See</u> Transcript at 67-69.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Farmer's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 20th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE